UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER L. HOLLINGSWORTH,

     Plaintiff,

v.                                     Case No.:  2:18-cv-573-FtM-32MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     Plaintiff Jennifer Lynn Hollingsworth filed a Complaint on August 22, 2018.  (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the transcript of the administrative proceedings (Doc. 13) (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions. (Doc. 31).  For the reasons set forth herein, the Undersigned respectfully recommends that the decision of the Commissioner be **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     Social Security Act Eligibility

     The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911

## II.       Procedural History

Plaintiff applied for social security disability insurance benefits on April 14, 2015.  (Tr. at 10).  She alleged her disability began on October 7, 2014.  (*Id.* at 215).[1]  The claim was initially denied on September 2, 2015, and upon reconsideration on October 22, 2015.  (*Id.*).  On January 31, 2017, Administrative Law Judge ("ALJ") Eric Anschuetz held a hearing that Plaintiff and her attorney attended.  (*Id.*).  The ALJ entered an unfavorable decision on May 24, 2017.  (*Id.* at 24). The Appeals Council denied Plaintiff's request for review on February 20, 2018.  (*Id.* at 5). Plaintiff then filed her Complaint in this Court on August 22, 2018.  (Doc. 1).  The case is ripe for review.

## III.      Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his or her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357

---

[1] Plaintiff originally alleged her disability began on August 20, 2012 (Tr. at 216-217) but later amended the onset date to October 7, 2014.

[2] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found Plaintiff met the insured status requirements through March 31, 2017. (Tr. at 13).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 7, 2014.  (*Id.*).  The ALJ, at step two, found Plaintiff to have the following severe combination of impairments:  "HNP (herniated nucleus pulposus) at C6-C7 and bulges at C5-C6 and C6-C7; GAD (general anxiety disorder); an adjustment disorder; and a depressive disorder (20 CFR 404.1520(c) and 416.920(c))."  (Tr. at 13).  At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr. at 15).

At step four, the ALJ:

> [a]fter careful consideration of the entire record, [found] that [Plaintiff] has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows:  [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently.  [Plaintiff] can stand and/or walk for a total of four hours during an eight-hour workday.  [Plaintiff] can sit for six hours in an eight-hour workday.  [Plaintiff] can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs.  She can occasionally balance, stoop, kneel, crouch, and crawl.  Furthermore, [Plaintiff] must avoid work place hazards such as unprotected heights and unshielded rotating machinery.  She must avoid concentrated exposure to vibrations.  She must have the option to sit or stand while remaining at her work station.  [Plaintiff] is limited to performing simple, routine, repetitive tasks, but not on a production quota basis.  She can have occasional interaction with supervisors, coworkers, and the public.

(Tr. at 17).

The ALJ found Plaintiff unable to perform any past relevant work.  (Tr. at 22). Considering Plaintiff's age, education, work experience, and RFC, the ALJ found jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (*Id.*).  Thus, the ALJ determined Plaintiff had not been under a disability, as defined in the Social Security Act, from October 7, 2014 through the date of his decision.  (*Id.* at 23).

## IV.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, considering evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**V.        Analysis**

On appeal, the parties raise two issues.  However, the second issue consists of seven

reasons why Plaintiff believes the ALJ's RFC assessment is incorrect.  As stated by the parties,

the issues are:

1.        Whether the ALJ erred in deciding the issue of disability during a period of
time in which Plaintiff was forbidden by regulations to present evidence;
and

2.        Whether the ALJ erred in the assessment of the RFC;

a.    The ALJ erred in his assessment of the RFC in his review of Plaintiff
having a family and in his review of her daily activities;

b.    The ALJ erred in his assessment of the RFC in his review of the opinion
of consultative psychological examiner, Dr. Visser;

c.    The ALJ erred in his assessment of the RFC in his review of the opinion
of treating psychiatrist, Dr. Gallegos [sic];

d.    The ALJ erred in his assessment of the RFC in his review of her work
history and the birth of her son;

e.    The ALJ erred in his assessment of the RFC in failing to properly assess
her need for surgery and her pain and other symptoms, before and after
the surgery;

f.    The ALJ erred in his assessment of the RFC in failing to properly assess
the medical opinion of Dr. Glasser that Plaintiff would have a prolonged
recovery from surgery; and

g.    The ALJ erred in his assessment of the RFC in failing to properly assess
the medical opinion of non-examining State agency physician.

(Doc. 31 at 4, 8, 12, 14, 16, 18, 24).  The Undersigned addresses each issue in turn below.

**A.     The ALJ Did Not Violate Plaintiff's Due Process Rights.**

Plaintiff first seeks remand because she alleges the ALJ did not allow her to submit

evidence up to and until the date she was last insured.  (Doc. 31 at 4).  The ALJ held a hearing on

January 31, 2017.  (Tr. at 62).  He then issued his unfavorable decision on May 24, 2017.  (*Id.* at

7).  Plaintiff claims the last date she could submit evidence was February 23, 2017.  (Doc. 31 at 4).  She points out, however, she was insured until March 31, 2017.  (*Id.*).  The crux of her argument, then, is that the date she was last insured fell before the ALJ's decision but after the evidentiary cutoff.

Plaintiff then appears to argue this timeframe violates both her due process rights and the SSA's own regulations.  Plaintiff claims the Program Operations Manual System ("POMS") explains the "procedure of the Social Security Administration for ALJs" is "to make their unfavorable decisions effective through the date of the decision or date last insured, whichever is earlier." (Doc. 31 at 4).  Yet the ALJ's decision, Plaintiff argues, found Plaintiff "disabled through the date of the decision, namely May 24, 2017, even though she could not present evidence after February 23, 2017." (*Id.* at 6).  Thus, Plaintiff claims "[t]he decision should be effective only through the date evidence is closed in order to provide due process . . . [w]ithout this limitation, [Plaintiff] is not provided with due process of law in the denial of benefits after the close of evidence." (*Id.*).

As an initial matter, the Undersigned finds any violation of POMS is not grounds for remand.  *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011).  In *Wells*, the Eleventh Circuit held the ALJ's alleged failure to follow POMS was not reversible error.  *Id.* There, the court noted POMS does not have the force of law.  *Id.*  Additionally, the court held that a violation of POMS does not entitle a claimant to relief.  *Id.*  Thus, because POMS does not have the force of law and because a violation of the SSA's internal guidelines does not entitle a claimant to relief, the court found that it "need not address whether the Commissioner adhered to the POMS."  *Id.*  Here, the same standard applies and the Undersigned does not find grounds to reverse the matter based on the ALJ's failure to adhere to POMS.

Furthermore, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). The SSA's regulations require a claimant to submit or inform the ALJ of any evidence no later than five business days before the scheduled hearing. *See* 20 C.F.R. §§ 404.935(a), 416.1435(a). Even so, an ALJ may consider evidence introduced after this deadline for good cause. *See* 20 C.F.R. §§ 404.935(b), 416.1435(b).

Plaintiff has failed to show a prejudice requiring reversal. The regulations directed the ALJ to set an evidentiary deadline of January 24, 2017, which was seven days before the hearing on January 31. Even so, almost a month after this deadline and well after the hearing, Plaintiff sought to admit additional evidence, which the ALJ accepted. (Tr. at 10 ("[Plaintiff] submitted or informed the [ALJ] about additional written evidence less than five business days before the scheduled hearing date. I find that the requirements of 20 CFR 404.935(b) and 416.1435(b) are satisfied and admit this evidence into the record.")). Nothing in the record reflects, nor does she argue, Plaintiff sought to submit additional evidence beyond what she did on February 23, 2017. Her representation that "she, therefore, did not have a meaningful right to be heard for the period after the evidentiary cutoff date of February 23, 2017" (Doc. 31 at 5) is inaccurate. So, too, is her conclusory statement that "[s]he is prejudiced because her date last insured is March 31, 2017, which is after the evidentiary cutoff." (*Id*. at 5). Ultimately, Plaintiff seeks remand because due process should leave "Plaintiff with a possibility, *if she can produce the evidence*, to try to establish disability after the evidentiary close and before her date last insured." (*Id.* at 6 (emphasis added)). The regulations, however, provide Plaintiff just that opportunity. *See* 20

C.F.R. §§404.935, 416.1435.  Therefore, because Plaintiff has failed to demonstrate prejudice, the Undersigned finds the ALJ's decision did not violate Plaintiff's due process rights.

>    **B.      The ALJ Did Not Err in Assessing Plaintiff's RFC.**

Plaintiff next argues several different reasons why she believes the ALJ incorrectly determined her RFC.  The Undersigned addresses each sub-issue separately below.

>    **1.      The ALJ Did Not Err in Considering Plaintiff's Family and Daily Activities.**

Plaintiff first argues her RFC does not accurately reflect her testimony about her family life and daily activities.  (Doc. 31 at 8).  Specifically, she argues the ALJ erred in stating "[d]espite her allegations of severe pain, [Plaintiff] has been able to raise a family and perform activities of daily living."  (*Id.* (citing Tr. at 19)).  Plaintiff argues "the evidence regarding 'raising a family' does not support working a full-time, 8-hour-a-day, 40-hour-a-week job."  (*Id.* at 9).  She also argues, "[a]t no time did [Plaintiff's] daily activities demonstrate anything near an ability to perform work activity for 40 hours a week."  (*Id.* at 11-12).

The Commissioner correctly points out:

>    In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."  *Id.* (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

Here, the ALJ stated at length his reasons for discrediting Plaintiff's subjective testimony.  He found "that [Plaintiff's] medically determinable impairments could reasonably be expected to

cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 18). For example, with regard to Plaintiff's herniated nucleus pulposus, the ALJ noted "her treatment notes documented that she seemed to be benefiting from opioid pain relieving therapy and that her pain was described as stable." (*Id.*). After surgery to treat Plaintiff's spinal issues, the ALJ explained "she reported some neck stiffness with residual discomfort and numbness in the forearms bilaterally, but she showed no motor dysfunction and her strength was normal on physical exams." (*Id.*). The ALJ further noted "[s]he had patchy sensations in the forearms, but her sensory exam was otherwise normal." (*Id.*). Thus, the ALJ concluded "that the intensity, persistence, and limiting effects of the claimant's symptoms are not consistent with or supported by the evidence of record to the degree alleged." (*Id.*).

Plaintiff also argues the ALJ improperly assessed Plaintiff's family relationships and daily activities themselves. First, citing *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469-1470 (M.D. Fla. 1990), Plaintiff argues "[t]he fact that a disability claimant is able to sustain a family relationship certainly does not demonstrate a capability for sustained gainful work." (Doc. 31 at 9). In *Hogard*, the district court found the ALJ erred in dismissing the claimant's subjective complaints because plaintiff was married and responsible for raising his children. *Id.* at 1469. The court held such reasons alone did not "constitute substantial evidence upon which to reject plaintiff's subjective complaints." *Id.* at 1470.

Here, unlike *Hogard*, the ALJ did not discredit Plaintiff's testimony *only* because she has a family. He noted that Plaintiff "drove to the hearing and that it took her 42 minutes to drive to the hearing by herself." (Tr. at 18). He noted that while Plaintiff claimed she stopped working

because of her pain, she told an examiner she stopped working when her son was born suggesting "that she may have stopped working for reasons other than because of the allegedly disabling impairments." (*Id.* at 19). Plaintiff testified she goes to the grocery store with her family and she washes a few dishes. (*Id.* at 83). She worked through her pain because "[she] had to. [She] had no other choice." (*Id.* at 82). All the foregoing demonstrates the ALJ did not discredit Plaintiff's testimony *merely* because she has a family but because of Plaintiff's levels of exertion. Accordingly, the ALJ articulated clear reasons for discrediting Plaintiff's subjective complaints about the extent of her limitations and those reasons are supported by substantial evidence. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 848 (11th Cir. 2017) (holding ALJ articulated clear reasons based on claimant's daily activities in discrediting her subjective complaints).

## 2. The ALJ Properly Considered Dr. Visser's Opinion.

Plaintiff's second argument is that the ALJ did not properly consider the opinion of Dr. Visser in formulating the RFC. Despite the ALJ stating he gave Dr. Visser's opinion great weight (Tr. at 21), Plaintiff argues "the body of the decision does not do what the ALJ claimed he was doing. It does not give great weight to the opinion of Dr. Visser." (Doc. 31 at 12). Plaintiff argues the ALJ failed to account for Dr. Visser's opinion that Plaintiff has problems focusing, retaining new information, functioning independently, and that Plaintiff is prone to stress and fatigue. (*Id.* at 13-14). Moreover, Plaintiff argues the ALJ did not explain why he disregarded Dr. Visser's medical findings, which Plaintiff argues warrant a more restrictive RFC. (*Id.* at 13). Plaintiff contends, therefore, "the failure to give an explanation for disregarding this opinion from Dr. Visser requires reversal." (*Id.* at 14).

The Eleventh Circuit has held "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Moreover, while an ALJ must state with particularity the weight he gives medical opinions, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, the ALJ considered Dr. Visser's medical opinion in detail and the RFC reflects the ALJ's consideration of Dr. Visser's opinion of Plaintiff's medical condition as a whole. (Tr. at 20-21). The ALJ thoroughly discussed Dr. Visser's opinion as it relates to Plaintiff's ability to work:

> During the exam, [Dr. Visser] observed that the claimant was slightly irritable at times but displayed no compulsive activity. Dr. Visser reported that her affect was blunted. He found that [Plaintiff's] expressions were congruent with her thoughts. Dr. Visser stated that she spoke clearly and was very fluent. He advised that [Plaintiff's] comprehension was good. Dr. Visser indicated that she was able to repeat and had no problem with naming. He reported that [Plaintiff's] ability to write and her reading ability was average. Dr. Visser found that her speech quality was clear and expressive. He noted that [Plaintiff] listened to the questions asked and presented her material logically . . . . He assessed that [Plaintiff's] attention and concentration were markedly low and that her short-term memory was below average but she was capable of long-term memory. Dr. Visser indicated that her executive functioning was average and that her mathematical abilities were near average. He noted that [Plaintiff] had insight and recognized her anxiety and depression. Dr. Visser stated that she used judgment to make choices appropriately. Dr. Visser reported the following regarding [Plaintiff]: independent in living arrangement; fully functioning in relating; well maintained hygiene; capable of dressing; limited involvement in housekeeping; not impaired in intellect; some interference in mood; seeking treatment for her mental illness; is

11

> marginal socially; some external interest in activities; and limited
> social effectiveness.   He found that [Plaintiff] was capable in
> understanding and memory.   Dr. Visser assessed that she was
> limited in concentration, persistence, and pace and in the ability to
> adapt.   He opined that [Plaintiff] was capable of understanding and
> following directions.    Dr. Visser indicated that her physical
> problems may cause overall functioning to be even lower.   He
> diagnosed generalized anxiety disorder with panic and adjustment
> disorder with depression and anxiety.

(Tr. at 20-21 (discussing Tr. at 438-445)).

The ALJ then discussed other medical evidence in the record regarding Plaintiff's mental health.  (Tr. at 20).  He noted "[Plaintiff's] mental status exams of record were essentially benign . . . While [Plaintiff] experiences symptoms of her mental impairments, the records show that she is able to communicate with others, act in her own interest, and perform most ordinary activities."  (*Id.*).  He found Plaintiff has mild limitations in understanding, remembering, or applying information and in support thereof cites Dr. Visser's examination which found Plaintiff capable in understanding and remembering and able to follow directions.  (*Id.* at 16 (discussing Tr. at 441)).  In interacting with others, the ALJ found Plaintiff has moderate limitations.  (*Id.*). Again, he discussed Dr. Visser's finding that Plaintiff was "marginal socially and displayed limited social effectiveness."  (*Id.*).  He specifically accounted for such limitations by limiting her to "occasional interaction" with others in her RFC.  (*Id.*).  He accommodated Dr. Visser's opinion that Plaintiff has difficulty concentrating, persisting, or maintaining pace by precluding her from production quotas and limiting her to simple, routine, repetitive tasks.  (*Id.*).

Thus, the ALJ did not err in considering Dr. Visser's opinion.  While he did not explicitly mention Dr. Visser's every finding, he discussed Dr. Visser's opinion extensively as well as Plaintiff's medical record as a whole.  The Undersigned finds the ALJ did not err in determining Plaintiff's RFC.

###### 3.     The ALJ Properly Reviewed Dr. Gallego's Opinion.

Plaintiff next argues the ALJ improperly "gave little weight to the opinion of Dr. Gallegos [sic] saying it was not well supported and was inconsistent with the medical evidence of record." (Doc. 31 at 16). Plaintiff argues the "main aspect of Dr. Gallegos' [sic] opinion were that she had poor concentration; was unable to cope with stress; and would not be able to work 8 hours a day for 5 days a week due to pain and panic attacks." (*Id.*). She concludes that substantial evidence does not support the ALJ's decision to afford Dr. Gallego's opinion little weight because "the evidence supports the opinion of Dr. Gallegos [sic] and not the ALJ's disregard of that opinion." (*Id.*).

"A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotations omitted). Furthermore, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Huntley v. Soc. Sec. Admin.*, *Comm'r.*, 683 F. App'x 830, 832 (11th Cir. 2017) (emphasis in original).

Dr. Gallego completed a Treating Source Mental Status Report in which he answered specific prompts with Plaintiff's various conditions. (*See* Tr. at 620-22). The Report indicated Dr. Gallego found Plaintiff depressed but having a thought process and content within normal limits. (*Id.* at 621). Dr. Gallego noted Plaintiff's concentration was poor but her orientation was within normal limits and Plaintiff did not suffer from hallucinations or disturbances. (*Id.*). He noted Plaintiff has poor coordination and is physically limited due to pain. (*Id.*). Dr. Gallego's prognosis was simply "panic attacks with agoraphobia." (*Id.*). When prompted for comments or descriptions of other data used in formulating his diagnosis, Dr. Gallego stated "+ anxiety. Unable to cope with stress." (Tr. at 622).

Here, the ALJ made clear he gave little weight to Dr. Gallego's opinion because it was "not well supported by medical signs and findings and [was] inconsistent with the medical evidence of record."  (Tr. at 21).  First, Dr. Gallego did not explain any of these findings, did not cite any medical evidence in support of those findings, nor were the medical findings accompanied by objective medical evidence and were conclusory.  (*See* Tr. 620-22).  In contradicting Dr. Gallego's Mental Status Report, the ALJ discussed evidence in the medical record elsewhere.  (Tr. at 20).  For example, the ALJ cites to Plaintiff's treatment records at Community Care Counseling Services, which state while Plaintiff suffers from adjustment disorder and mood/anxiety disorder her prognosis is "good with treatment."  (Tr. at 509).  The ALJ pointed to Plaintiff's treatment notes with Allied Center for Therapy (Tr. at 20) showing periods of exacerbated mental health symptoms (*see* Tr. at 669 (noting Plaintiff's mood as sad with panic attacks)), but also periods where Plaintiff reported being in a stable mood and denying suicidal ideation or hallucinations (*see* Tr. at 667-80).  Additionally, the ALJ pointed to Dr. Visser's report which found Plaintiff capable of caring for herself, having a cooperative attitude, possessing fluent speech with good comprehension, normal thought processes, being marginally social, showing some external interest in activities, and presenting limited social effectiveness. (Tr. at 439-43).  Thus, the ALJ did not err in giving Dr. Gallego's opinion little weight because the ALJ specifically identified and discussed substantial evidence in the record contradicting Dr. Gallego's opinion.

### 4.  The ALJ Properly Assessed Plaintiff's Work History.

Plaintiff next argues the ALJ improperly "discredited [Plaintiff's] credibility and the severity of her symptoms" because she told Dr. Visser she stopped working when she gave birth. (Doc. 31 at 16).  Plaintiff argues a more accurate representation of her work history is that while

she stopped working after she gave birth, "she resumed working shortly after that, and subsequently was fired from a job . . . because she was not able to perform the duties of that job anymore." (*Id.* at 18). She concludes by arguing "[f]or this Court to try to determine whether the ALJ would still have denied Ms. Hollingsworth disability and disability benefits if he had properly considered her work history and the place her son's birth had in that work effort would be speculation on the part of this Court." (*Id.*).

Here, the ALJ addressed Plaintiff's work history in analyzing her subjective complaints and articulated explicit and adequate reasons for discrediting Plaintiff's subjective complaints. (Tr. at 19). While the ALJ did mention the record reflecting a possibility Plaintiff stopped working because of childbirth, the ALJ analyzed other aspects of Plaintiff's work history as well. (*Id.*). He noted Plaintiff testified she worked "through her alleged pain for a period of time and that she received unemployment compensation benefits and looked for part-time work after she stopped working." (Tr. at 93-94). The ALJ explained "receipt of unemployment compensation benefits does not preclude a finding of disability and is only one of many factors that must be considered." (*Id.* at 19). Nevertheless, the ALJ opined "receipt of such benefits generally indicates looking for a job and performing various mental and physical activities in order to continue receiving unemployment benefits such as going on interviews and filling out applications." (*Id.*). Far from the dispositive reason for discrediting Plaintiff's testimony, the birth of Plaintiff's son was but one of many factors the ALJ considered. Therefore, the Undersigned finds remand improper given the ALJ's explanation for his analysis of Plaintiff's work history.

### 5.     The ALJ Properly Considered Plaintiff's Surgery.

Plaintiff next alleges the RFC does not reflect her need for spinal surgery nor her pain and other symptoms.  (Doc. 31 at 24).  She argues the ALJ minimized Plaintiff's complaints because of her conservative treatment with pain medication.  (*Id.* at 23).  It appears that Plaintiff also argues the ALJ erred in assuming her pain management was adequate because she put off the surgery when in actuality she was trying to raise money for the procedure.  (*Id.*).

Here, the ALJ addressed Plaintiff's musculoskeletal issues at length:

> In terms of [Plaintiff's] HNP (herniated nucleus pulposus) at C6-C7 and bulges at C5-C6 and C6-C7, the medical evidence of record shows that [Plaintiff] had an MRI of the cervical spine which showed a C6-C7 broad-based central/bilateral disc protrusion with canal stenosis and neuroforaminal narrowing and a C5-C6 disc bulge with central canal stenosis.  [Plaintiff] was seen for pain management services by Charlotte County Medical Solutions throughout 2015 and early 2016 where she was treated conservatively with prescribed medication.  Her treatment notes documented that she seemed to be benefiting from opioid pain-relieving therapy and that her pain was described as stable.  [Plaintiff] was seen for further evaluation by Neurosurgery and Spine Specialists in February 2016, at which time it was noted that she had been seen a year and a half ago, at which time surgery was recommended but [Plaintiff] was fearful at that time.  Surgical intervention was also recommended in 2016, so [Plaintiff] underwent a C5-C6 and C6-C7 anterior cervical discectomy and fusion with plate on March 23, 2016 at Advanced Surgery Center of Sarasota.  When [Plaintiff] was seen postoperatively in June 2016, she reported some neck stiffness with residual discomfort and numbness in the forearms bilaterally, but she showed no motor dysfunction and her strength was normal on physical exam.  She had patchy sensation in the forearms, but her sensory exam was otherwise normal.  Imaging studies of the cervical spine showed that the hardware was in good position.  Physical therapy was discussed, but it was noted that [Plaintiff] did not want to do this due to money issues.  It was specified that there was no further surgery that would benefit [Plaintiff] and that she could return as needed.  [Plaintiff] subsequently went to physical therapy at Fitness Quest Punta Gorda for a limited number of sessions.  Her treatment records indicate that she did show some progress toward long-term goals in physical therapy.  The medical evidence shows that she resumed pain

management services at Broadway Health and Rehab where she was
treated conservatively with prescribed medication.

(Tr. at 18-19).

Plaintiff's argument that "the ALJ has not adequately articulated reasons" (Doc. 31 at 24)
to afford her need for surgery and representations of pain less weight is unconvincing.  The ALJ,
after stating he "adequately considered and accommodated [Plaintiff's] subjective reports and
limitations from her severe musculoskeletal impairment," limited the amount Plaintiff can lift,
how long she can stand or walk, and how long she can sit.  (Tr. at 19).  He noted Plaintiff's own
testimony that she drives, she gets her child up to go to school and helps him dress, she washes
dishes, and goes to the grocery store.  (*Id*. at 83, 91, 440).  Thus, there is substantial evidence in
the record supporting the ALJ's assessment of Plaintiff's testimony about her surgery and
subjective reports of pain.

### 6. The ALJ Properly Assessed Dr. Glasser's Opinion.

Plaintiff's sixth argument for why the ALJ's RFC is deficient consists of two sentences.
Plaintiff argues "The opinion of Dr. Glasser that [Plaintiff] would have a prolonged recovery was
a medical opinion contained in Dr. Glasser's medical notes."  (Doc. 31 at 24).  "As such,"
Plaintiff contends, "the ALJ was required to state the weight given to such an opinion and
articulate his reasons for that weight."  (*Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d
1176, 1179 (11th Cir. 2011)).

Plaintiff, however, is incorrect that the ALJ needed to assign any weight to Dr. Glasser's
prediction that Plaintiff would have a prolonged recovery.  Mere treatment notes are not medical
opinions which the ALJ must weigh.  *See Valentin v. Acting Comm'r of Soc. Sec. Admin.*, No.
6:15-cv-1927-Orl-MCR, 2017 WL 840918, at *5 (M.D. Fla. Mar. 3, 2017) (finding treatment
notes were not medical opinions because they did not "identify specific physical or mental

restrictions caused by [plaintiff's] impairments" and ALJ did not err in failing to assign weight to treatment notes).  The courts have found an ALJ commits no reversible error when he does not weigh a medical opinion which fails to reflect what limitations plaintiff's ailments have on that plaintiff's ability to work.  *Chester v. Comm'r of Soc. Sec.*, No. 6:15-cv-0097-Orl-22TBS, 2015 WL 9592444, at *4 (M.D. Fla. Dec. 11, 2015); *see Felder v. Comm'r of Soc. Sec.*, No. 6:16-cv-601-Orl-DNF, 2017 WL 2773491, at *5 (M.D. Fla. Jun. 27, 2017) (finding ALJ did not err in failing to specifically weigh physician's evaluation because evaluations did not comment on plaintiff's ability to work).

Here, the "opinion" Plaintiff cites to in the record, in full, reads:  "Overall the patient is having a lengthy recovery, given to the long length she has had issues [sic]." and "Overall, [Plaintiff] is doing fair.  Unfortunately she likely will have a prolonged recovery, given the length of time she has had issues."  (Tr. at 762, 768).  At no point did Dr. Glasser expand on those assessments or, more critically, opine as to how her recovery would limit Plaintiff's ability to work.  Dr. Glasser does not discuss what work Plaintiff can engage in, what work Plaintiff should refrain from, he does not provide a timeframe specifically excluding Plaintiff from work, or in any way relate her recovery to Plaintiff working.  The Undersigned finds Dr. Glasser's two sentences, without more, do not constitute a medical opinion that the ALJ needed to assign weight.  Therefore, the ALJ did not err in failing to specifically assign weight to Dr. Glasser's observation that Plaintiff would have a lengthy recovery.

### 7.    The ALJ Properly Considered the Opinion of the State Agency Medical Consultant.

Plaintiff's final argument is that the ALJ erred in giving a non-examining state agency physician's opinion great weight.  She argues "[g]enerally, the opinion of a non-examining reviewing physician is entitled to little weight and taken alone does not constitute substantial

evidence to support an administrative decision." (Doc. 31 at 24 (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990)). Nevertheless, Plaintiff argues the ALJ stated the state agency physician's opinion was "well supported by medically acceptable clinical findings and diagnostic techniques and consistent with the medical record. No further explanation was given." (Doc. 31 at 24 (citing Tr. at 21)). Because the "ALJ did not explain what the medical evidence was on which he was relying for that statement," Plaintiff argues, "[t]his too requires reversal." (*Id.*).

The opinions of non-treating examiners are not substantial evidence nor good cause for rejecting a treating physician's opinion. *Brock v. Comm'r of Soc. Sec. Admin.*, 758 F. App'x 745, 750 (11th Cir. 2018). An ALJ may, however, give a non-treating examiner's opinion significant weight when it is consistent with the objective record as a whole. (*Id.* (holding it was proper for an ALJ to rely on the opinion of non-treating examiners because their opinion that claimant could work was consistent with the objective record as a whole)).

Here, the ALJ found the state agency physician's assessment to be consistent with the medical record and well supported by medically acceptable clinical findings and diagnostic techniques. (Tr. at 19). A review of the physician's assessment shows that she relied on Plaintiff's own testimony, as well as records from Charlotte County Medical Solutions, Inc., Allied Center for Therapy, Harbor Neurosurgical Associates, Suncoast Pain Management Center, and Dr. Visser's treatment notes; all sources present within the record. (*Id.* at 123-24). The physician then found Plaintiff's affective and anxiety-related disorders mildly restrict her daily-living activities and that Plaintiff has mild difficulty in maintaining social functioning as a result of those disorders. (*Id.* at 127). Furthermore, the physician noted those disorders cause mild difficulties in Plaintiff maintaining concentration, persistence or pace. (*Id.*). These findings are

similar to those of Dr. Visser discussed above.  (Tr. at 439-43).  The physician's assessment that "claimant has secondary psychological issues that impose limits though non-severe" mirrors the treatment notes at Allied Center for Therapy which show periods where Plaintiff's mental disorders are exacerbated but that overall she is functioning.  (Tr. at 667-80).  In formulating Plaintiff's recommended RFC, the physician discussed Plaintiff's May 2015 physical exam where Plaintiff stated standing for too long or lifting would cause her pain and aggravate her spinal injuries.  (Tr. at 129).  The physician cited Plaintiff's own testimony regarding Plaintiff playing with her children and that she can vacuum and sit/stand for periods albeit with pain.  (*Id.* at 130).  In sum, the state agency physician's opinion considers and aligns with other objective evidence in the medical record.  The ALJ did not rely on the physician's opinion in a vacuum but instead recognized that it was entitled to higher weight given its consistency with the record. (*See* Tr. at 21).  Therefore, contrary to Plaintiff's argument, the ALJ did not err in giving the state agency physician's opinion great weight.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds the ALJ did not commit reversible error.  Plaintiff fails to show how the ALJ's decision prejudiced her given that she did not attempt to introduce any evidence after her date last insured but before the ALJ's decision.  Furthermore, substantial evidence in the record supports the ALJ's RFC finding and Plaintiff has not met her burden to show otherwise. Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.    The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 32 U.S.C. § 405(g); and

2.      The Clerk of Court be directed to enter judgment accordingly, to terminate any

pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on January

30, 2020.


_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE



### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions.  A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir.

R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties